LILLIE B. REDDISH ET AL., per Guardian, v. JOHN W. CARTER.

J., before the wills act of 1840, devises lands to S., "to have and to hold during his natural life, and to his heirs, and in case of the decease of S. before maturity and without legal issue," then remainder over.

*Held,* that by "heirs," the testator meant "children;" that the intention should overcome an arbitrary rule of law, and that, disregarding the rule in Shelley's case, S. took but a life estate.

A court, in order to carry out the clear intention of a testator, must frequently regard the words "heirs," "children," and "issue," as convertible.

GENERAL TERM.—This case is reserved from Special Term upon demurrer to the petition, which discloses the following facts :

The plaintiffs are the children of Stevenson Reddish and the grandchildren of Thomas Reddish, both of whom are now deceased.

The defendant derives his title from the grantee of Stevenson Reddish, and claims to hold the fee of certain real estate.

On the 17th day of March, 1831, Thomas Reddish, by his will, devised to his son "Stevenson a lot in Cincinnati, situated on the north side of Longworth street, to have and to hold the same during his natural life, and to his heirs, and in case of the decease of said Stevenson before his maturity according to law, and without lawful issue, then the same lot, as well as all the real or personal estate whatever, which may be coming to him through the said testator's will, to be left to the surviving children of my sister Elizabeth Bently, and my brother John Reddish, both of the town of Manchester, England, equally to share them." Other real estate was devised to Stevenson Reddish and his sister Sarah Reddish, to hold in the same manner, and by a similar clause. The personal estate of

Reddish et al. *v.* Carter.

the testator was also given to the same parties, to be held in the same manner as was prescribed by the testator of his realty.

*Edward Colston* and *Jordan, Jordan & Williams*, in support of the demurrer:

1. The words "during his natural life and to his heirs," taken alone, will convey a fee by force of the rule in Shelley's case.    1 Fearne on Remainders, [149,] [193]; 1 Preston on Estates, [263]; *McFeely's Lessee v. Moore's Heirs*, 5 Ohio, 465; *Armstrong v. Zane's Heirs*, 12 Ib. 287; *King's Adm'r v. King's Heirs*, Ib. 390.

2. The ulterior devise, in default of issue to first devisee, does not impair the legal effect of the word "heirs" in the prior devise, as they do not at all refer to the *quantity* of the estate, but merely to its disposition on the happening of a contingency, which has not yet occurred nor can now ever occur.    4 Kent's Com. 214, and cases cited *supra*.

3. The testator must be considered as having used the word "heirs" in its legal import, unless it appear so clearly that no one can misunderstand that his intention was to give it some other meaning.    1 Fearne on Remainders, [168,] and cases cited; 2 Jarman on Wills, [277] *et seq.*; *Ide v. Ide*, 5 Mass. 500; *Mowat v. Carew*, 7 Paige Ch. 328; *Poole v. Poole*, 3 B. & P. 620; *Jesson v. Wright*, 2 Bligh, 56, decided by Lord Eldon and Lord Redesdale.

All admit that technical words are not necessary in a will; but where a testator sees fit to use such words, we are bound to understand that he used them in their appropriate sense, unless he himself has satisfied us that he has not done so.    The principal American cases are: *Ellis v. Essex Bridge*, 2 Pick. 243; *Bowers v. Porter*, 4 Pick. 198; *Stevenson v. Evans*, 10 Ohio St. 307; *Collier v. Collier*, 3 Ohio St. 369; *Niles v. Gray*, 12 Ohio St. 320.

4. The circumstances of the devise to Stevenson being for his life does not show the intention of the testator so

clearly as to prevent the rule in Shelley's case from apply-
ing.  *Roe* v. *Bedford*, 4 Maule & Sel.; *Robinson* v. *Robin-
son*, 2 Vesey, Sen., 225; *Doe* v. *Cooper*, 1 East, 229; *Perrin*
v. *Blake*, 4 Burr, 2579; *McFeely's Lessee* v. *Moore's Heirs*, 5
Ohio, 465.

*Matthews & Ramsey* and *Thos. T. Heath*, contra:

1. That the devise to Stevenson Reddish expressly limits
to him an estate for life only, and that such appears to
have been the intention of the testator, which the court
will effectuate without reference to any arbitrary rule of
construction.  *King* v. *Beck*, 15 Ohio, 559.  This position
does not exclude the authority, but merely the application
of *Smith* v. *Berry*, 8 Ohio, 365; *Thompson* v. *Hoop*, 6 Ohio
St. 480.

2. That the use of the words "decease before maturity
without lawful issue" shows that the word "heirs" was
used with the meaning and sense of "issue," and meant
children or descendants, and that they therefore will be
construed words of purchase and not of limitation.  *Ste-
venson* v. *Evans*, 10 Ohio St. 307; *Ellicombe* v. *Gompertz*, 3
Mylne & Cr. 127–154; *Abbott* v. *Essex Co.*, 18 How. 202.

3. *Niles* v. *Gray*, 12 Ohio St. 320, is clearly to be dis-
tinguished, as in that case it was the clear intention to give
a fee simple in the first devisee, while in the one at bar the
intention is equally clear to give but a life estate.  The
former simply decides that the words "dying without
issue" mean issue living at the death of the devisee, and
can not therefore have the force they would if construed
to mean without issue indefinitely.  See *Hull* v. *Priest*, 6
Gray, 18.

STORER, J.  A single question is presented for our de-
termination: What estate did Stevenson Reddish take
under the devise from his father?  Was it a term for his
life only, a fee simple, or a fee tail?

The defendant claims to hold an estate in fee, while the

plaintiffs allege their father, when he made the conveyance, held an estate for life only.

Where the intention of a testator can be ascertained, we need not resort to any artificial rule to limit or extend a devise.

If the purpose of the testator can be determined without violence to the language he has used, and there is no ambiguity in the terms employed, it is our duty so to interpret the whole instrument that we shall give effect to what we are satisfied was the object of the testator in disposing of his property.

The will before us was probated in December, 1831, when the rule relied upon by the plaintiff was admitted to be the law in Ohio. *McFeely's Heirs* v. *Moore*, 5 Ohio, 469. But by the wills act of 1840, sec. 47, 1 Curwen, 69, it was provided, " When lands, tenements, or hereditaments are given by will to any person for life, and after his decease to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only to such first taken, and a remainder in fee simple to his heirs." This section was re-enacted in May, 1852. 3 Curwen, 1911.

From the fact that our legislature, so soon after the decision in *Moore* v. *McFeely* was rendered, declared that the rule in Shelley's case should no longer be followed in construing devises, and the general unwillingness of the profession to adopt it, regarding it as a technical and arbitrary exposition of the law, we ought not to apply it in any case, even if the statute had not been passed, unless we were required to do so to uphold a devise that would otherwise fail. Whatever estate was devised by the testator to his son became vested before the statute of 1840; but we do not feel bound to regard it with any more favor than we should if the decision in McFeely and Moore was still obligatory. In *King's Heirs* v. *King's Adm'rs*, 12 Ohio, 390, following their former opinion in *McFeely* v. *Moore*, the Supreme Court held that the rule in Shelley's case, although not then applicable

to wills taking effect since 1840, was in all other respects a rule of property in Ohio; but this opinion was afterward reversed in *King* v. *Beck*, 15 Ohio, 559, where it was held that the rule referred to would not be allowed to prevail against the intention of the testator, if that intention could be effectuated without creating an estate forbidden by law.

The effect of this decision, we suppose, was in all cases where the limitation in the will was to the first taker for life by express words, to deny the application of the rule referred to, regarding the section 47 of the wills act as declaratory of the law previously existing, not as establishing a new rule, but removing. all doubt as to what the law really was. We may therefore conclude, that in every case where there is a clear expression of the testator's purpose by the language of the devise, that the devise should hold for life only, that intention should be adhered to, without resorting to a mode of proceeding purely arbitrary to explain it.

The learned judge who decided the case of *McFeely* v. *Moore*, seemed to regard the rule with more veneration for its antiquity and the learning with which it had been discussed in England, without any particular reason for its applicability to our institutions, and it has since met with no particular favor with the profession in Ohio. The rule itself has been abolished by statute in New York, Maine, Massachusetts, Connecticut, and Illinois, and in Mississippi, New Hampshire, and New Jersey, it is applicable only to grants, and we think it should not be applied in this State to wills probated before 1840, except in extreme cases, where no other course can be followed.

We need not refer to the bitter opposition the rule encountered in its early history, until after the conflict of nearly two centuries it was finally confirmed in *Perrin* v. *Blake*. Sufficient is it for us to feel that it would never have originated in the United States, where no such condition of things existed which had induced the English courts to introduce it into the body of the common law before the revolution.

If we refer to the devise of the testator to his son, it vests

the devisee by explicit language with an estate for life and to his heirs, and in case of the decease of the devisee before he arrives at his majority, and without lawful issue, there should be a remainder over to the children of the testator's sister and brother.

It is argued that the word "heirs" following the estate for life, there being no word preceding it designating the class of heirs, must be taken to mean heirs generally; but we think when taken in connection with the subsequent part of the devise, which gives the estate for life where the children of the devisee are named, as restricting the term "heirs" to the issue of the devisee, thus creating an estate tail, and vesting a fee simple in the children of the devisee as first donees in tail under the statute. It is admitted that the devisee, the testator's son, not only arrived at full age, but the plaintiffs are his children, who take, we are satisfied, no estate from their father by descent, but are vested with an estate by purchase, by virtue of their grandfather's will.

The words "heir, heirs, children, and issue," are frequently regarded as convertible, and may be construed, taking into consideration the whole will, to mean either one or the other, as its proper construction may require; thus, a devise to heirs may be interpreted to mean children or issue, and either restricted or enlarged, as may be necessary to carry out the purpose of the testator. *Cosby et al* v. *Lee's Ex'rs*, 2 Disney, 460; *King* v. *Beck*, 15 Ohio, 559; and the well-considered case of *Bowers* v. *Porter*, 4 Pick. 209, where Chief Justice Parker reviews the whole law on the subject.

Judge Redfield very aptly says, in his late work on Wills, vol. 2, p. 204, that the rule in Shelley's case has more commonly "led one side of the real intention of the devisor than almost any other;" and of a similar opinion was our Supreme Court, when they decided the case of *King* v. *Beck*, 15 Ohio, 559, on a will probated before 1840, where they held, to use the language of Judge Read, who gave the opinion, "that they had no disposition to strain a point to

bring a case within the operation of the rule in Shelley's case, a rule, he said, which had its origin in feudal tenure, and was first adopted to secure to the lord the profits and perquisites incident to inheritances, and as an afterthought, the additional reason that it was necessary to prevent an abeyance of the fee.   It is at least an artificial technicality, and just in proportion as it lacks reason, it has won upon the affections of the profession; but it is the duty of this court to conform its decisions, when we attempt to walk by the light of precedent from another country, to the nature of our institutions."

While we admire the touching lamentation of Chancellor Kent, upon the abolition of the rule in New York, we have no disposition with him to mourn over its fate.   4 Kent's Com. 267, note.

On a careful consideration of all the questions made by counsel, we are all of opinion that the testator intended to devise a life estate only to his son in the property described in the petition, with remainder over to his grandchildren, whether in fee or in tail it is immaterial for the purposes of this action, as in either case the plaintiff must recover.

We have been favored, both by oral and written argument, with a very able discussion of the law of devises, more especially on the proper application of the rule in Shelley's case to the devise of the testator to his son; but while we have been impressed with the thorough research of counsel into the ancient law, as expounded by Fearne and Perkins, and the more modern adjudications of the courts, while we admit they have so well vindicated the maxim "*sa'ius est petere fontes, quam sectari rivulos,*" we are, nevertheless, fully persuaded the rule we have discussed is not one of construction to which we are bound implicitly to adhere.

On the whole case, judgment will be rendered for the plaintiffs.